In the

# United States Court of Appeals
## For the Seventh Circuit

Nos. 25-1737 & 25-2180

JACQUELINE J. AGEE and JOHN J. AGEE,

*Plaintiffs-Appellants*,

*v.*

PAIGE N. HICKENBOTTOM, et al.,

*Defendants-Appellees*.

Appeals from the United States District Court for the
Northern District of Indiana, Hammond Division.
No. 2:23-cv-00404-GSL-AZ — **Gretchen S. Lund**, *Judge*.

ARGUED JANUARY 28, 2026 — DECIDED JULY 17, 2026

Before HAMILTON, MALDONADO, and TAIBLESON, *Circuit Judges*.

HAMILTON, *Circuit Judge*. Plaintiffs Jacqueline Agee and her son John Agee allege that three Indiana police officers intentionally pursued baseless charges against them because Jacqueline is a police officer in Illinois. The district court dismissed the case and did not allow plaintiffs to amend their complaint to raise class-of-one equal protection claims. Those claims are not futile, so leave to amend should have been

granted. We reverse the relevant part of the district court's judgment.

I.  *Factual and Procedural Background*

   A.  *The Incident*

Jacqueline Agee is a law enforcement officer who works in Illinois and lives in the town of St. John, Indiana, with her two sons, Braden and John. Her sons were twenty and sixteen years old, respectively, during the events of this case. On the evening of November 22, 2022, a caller told St. John police that as a group of children were walking home from school that day, a male person in the garage at the Agee residence pointed a gun at the children.[1]

Defendants Paige Hickenbottom, Samuel Jacobs, and Jarrett Stickle are officers in the St. John Police Department. They responded and interviewed witnesses. Officers Stickle and Hickenbottom spoke with the parents of a girl who had described the suspect to them as a "twenty to twenty-five-year old" man. Officers Jacobs and Hickenbottom also spoke with a boy who said that "a male pointed what [he] believed to be a 'black' 'BB gun' at him and three other juveniles from outside of the garage" of the Agee residence. The boy could not provide a description beyond the suspect's gender. Finally, all three officers spoke with the father of two other children who said his children told him that "the 'older boy' came out of the garage [at the Agee residence] and pointed 'what looked like [a] gun at them' as they, and two other juveniles, were cutting through a yard on their way home from school."

---

[1] We relate the allegations of the proposed second amended complaint. We refer to plaintiffs by their first names to avoid confusion.

The officers then went to the Agee residence to question Jacqueline and John. (On the way, they allegedly made derogatory statements about Jacqueline being an Illinois law enforcement officer, which we discuss below.) Jacqueline told officers that she had been told that "her oldest son with a beard (Braden) had pointed a gun at four juveniles cutting through a yard." Jacqueline said this was impossible because Braden was at work at the time. Officer Stickle allegedly "confirmed" Braden's alibi. The officers then questioned John without Jacqueline's permission, which she asserts violated state law because he was a minor. See Ind. Code § 31-32-5-1 (standards for waiver of a child's constitutional or other legal rights). During the interview, "John admitted to working on his airsoft gun, looking at targets in the backyard, but he denied aiming it."

After Officer Jacobs indicated that John's actions amounted to the crime of intimidation with a deadly weapon, Jacqueline responded that an airsoft gun is not a deadly weapon under Indiana law. Jacobs contacted a police supervisor (not a party to this case) about the issue. The supervisor agreed with Jacqueline's objection but told Jacobs he could nonetheless "'write it up' and 'send it to the prosecutor's office.'" The officers left without taking Jacqueline or John into custody.

That evening, Officer Stickle swore to a probable cause affidavit against John for the charge of intimidation. He also affirmed and mailed Jacqueline a citation that "states that on November 22, 2022, at 2130 hours, Jacqueline knowingly permitted John to discharge a pellet gun in town limits" in violation of a municipal ordinance. After plaintiffs hired attorneys,

the juvenile prosecutor declined to file the charge against John, and Jacqueline's citation was dismissed with prejudice.

B. *This Lawsuit*

Jacqueline then sued the officers and the town of St. John in the Northern District of Indiana. She asserted claims for herself and on behalf of John, then a minor, under 42 U.S.C. § 1983 for malicious prosecution, false arrest, and failure to intervene, as well as a state law claim for indemnification under Ind. Code § 34-13-3-5. The district court granted defendants' motion to dismiss and entered judgment three days later without providing plaintiffs an opportunity to amend the complaint.

Twenty-two days after entry of judgment, plaintiffs filed what they styled a motion to vacate the judgment under Federal Rule of Civil Procedure 60(b). They sought leave to file a proposed first amended complaint, attached to the motion, which alleged additional claims under § 1983 for abuse of process and equal protection on a class-of-one theory. The district court denied the motion because it concluded that both new claims failed as a matter of law. The court specifically called the equal protection claim "futile" because the officers "had reason to believe that Plaintiff Jacqueline permitted Plaintiff John to discharge a pellet gun … within the town limits."

Twenty-eight days after the order denying leave to amend, plaintiffs filed what they styled a motion for reconsideration of that order, again under Rule 60(b). They attached a proposed second amended complaint, which contained new allegations about the officers' states of mind. The next day, plaintiffs filed a notice of appeal as to the original judgment and

the denial of the first post-judgment motion. Then the district court denied the second motion as moot and wrote that after plaintiffs appealed, the court "was divested of jurisdiction to take any action that would alter the Judgment." Plaintiffs filed an amended notice of appeal thirty days after that order.

We consolidated the appeals and granted plaintiffs' motion to substitute John as a party in his own right as an adult. See Fed. R. App. P. 43. The district court had jurisdiction over the federal constitutional claims under 28 U.S.C. §§ 1331, 1343. We have jurisdiction under 28 U.S.C. § 1291.

We affirm dismissal of the malicious prosecution, false arrest, and failure-to-intervene claims, as well as the claims against the town of St. John. We also affirm in part the district court's denial of leave to amend as applied to the proposed abuse-of-process claim. We reverse, however, the denial of leave to amend to assert class-of-one equal protection claims. Also, dismissal of the indemnification claim must be modified to dismissal without prejudice.

II. *Procedural Issues*

"Ordinarily … a plaintiff whose original complaint has been dismissed under Rule 12(b)(6) should be given at least one opportunity to try to amend her complaint before the entire action is dismissed. We have said this repeatedly." *Runnion ex rel. Runnion v. Girl Scouts of Greater Chicago & Nw. Indiana*, 786 F.3d 510, 519 (7th Cir. 2015), citing, e.g., *Barry Aviation Inc. v. Land O'Lakes Municipal Airport Comm'n*, 377 F.3d 682, 687 & n.3 (7th Cir. 2004) (collecting cases). "The court should freely give leave [to amend a complaint] when justice so requires." Fed. R. Civ. P. 15(a)(2); see *Foman v. Davis*, 371

U.S. 178, 182 (1962) (noting "this mandate is to be heeded").
As we wrote in *Runnion*:

> When a district court denies a plaintiff such an
> opportunity, its decision will be reviewed rigor-
> ously on appeal. In *Barry Aviation*, we said that
> giving leave to amend freely is "especially ad-
> visable when such permission is sought after
> the dismissal of the first complaint. Unless
> it is *certain* from the face of the complaint that
> any amendment would be futile or otherwise
> unwarranted, the district court should grant
> leave to amend after granting a motion to dis-
> miss."

786 F.3d at 519–20 (emphasis in original), quoting *Barry Avia-
tion*, 377 F.3d at 687. The liberal amendment standards of Rule
15 promote a healthy legal system in multiple ways. By allow-
ing plaintiffs at least one chance to cure deficiencies in their
pleadings and to refine their legal theories, more cases should
be decided on the merits rather than on formalities, especially
after *Iqbal* and *Twombly* introduced new uncertainties as to
pleading requirements. See *Ashcroft v. Iqbal*, 556 U.S. 662
(2009); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007). Fur-
ther, when an appeal does occur, the court of appeals will
have a more fulsome record to review. Because the district
court did not allow plaintiffs any chance to amend in this case,
however, there was not a full separate round of briefing on
the first or second proposed amended complaints.[2]

---

[2] Plaintiffs here attached their proposed amended complaints to their
post-judgment motions, thereby telling the court exactly how they wanted

If the district court enters judgment without allowing leave to amend and the plaintiff timely seeks to set aside that judgment under Rule 59(e) to amend, the same liberal amendment standard of Rule 15(a)(2) applies. *Reilly v. Will County Sheriff's Office*, 142 F.4th 924, 929 (7th Cir. 2025). Denial of leave to amend is ordinarily reviewed for abuse of discretion, but when denial is based on futility, we review de novo "the legal basis for the futility." *Runnion*, 786 F.3d at 524. Essentially, we review de novo a proposed amended complaint for legal sufficiency. *Reilly*, 142 F.4th at 930.[3]

Once filed, a notice of appeal divests the district court of jurisdiction to *grant* a motion to amend the complaint, however styled, unless the motion was made within the time allowed for filing a motion under Rule 59, in which case the notice of appeal does not become effective until the district court decides the motion. Fed. R. App. P. 4(a)(4)(B)(i); *Motorola Solutions, Inc. v. Hytera Communications Corp.*, 108 F.4th 458, 503–04 (7th Cir. 2024). That rule does not make a Rule 60(b) motion

---

to amend the complaint. This step is much more helpful than a vague request for leave to amend.

[3] The rigorous "extraordinary circumstances" standard applies to reopening a case to amend a complaint under Rule 60(b)(6). *BLOM Bank SAL v. Honickman*, 605 U.S. 204, 206 (2025). However, we treat a motion labeled with Rule 60(b) as a Rule 59(e) motion if it is filed within 28 days of the judgment, at least if the reasons for seeking relief are encompassed by Rule 59(e), such as challenging an erroneous conclusion of law that amendment would be futile. See *Carter v. City of Alton*, 922 F.3d 824, 826 n.1 (7th Cir. 2019); *Obriecht v. Raemisch*, 517 F.3d 489, 493 (7th Cir. 2008); see also *Banister v. Davis*, 590 U.S. 504, 520 n.9 (2020) (acknowledging this long-standing practice across the circuits). A motion labeled as a Rule 60(b) motion filed within 28 days of judgment is equivalent to a Rule 59(e) motion for purposes of the deadline to appeal. Fed. R. App. P. 4(a)(4)(A).

filed more than twenty-eight days after judgment moot, as the district court concluded. Instead, Federal Rule of Civil Procedure 62.1 allows the district court to deny the motion, to defer consideration, to state that the motion "raises a substantial issue," or to issue an indicative ruling stating that it would grant the motion if the court of appeals were to remand for that purpose. See also Fed. R. App. P. 12.1. While choosing to defer consideration for appropriate reasons is within a district court's discretion, an erroneous conclusion that the court lacks jurisdiction to do anything other than deny the motion summarily can result in the court abusing its discretion by failing to "even consider the possibility of an indicative ruling." *Motorola*, 108 F.4th at 504. That's what happened here.

The district court's authority to issue an indicative ruling on a motion to amend a complaint can smooth out rough spots in litigation. If the court of appeals remands, proceedings can continue in the district court without the time and expense of an appeal. If the district court then denies the motion on the merits, the court of appeals will have the benefit of a written explanation why, in the district court's view, it remains "*certain* from the face of the [proposed amended] complaint that [the] amendment would be futile or otherwise unwarranted." *Runnion*, 786 F.3d at 519–20 (emphasis in original), quoting *Barry Aviation*, 377 F.3d at 687.

III. *Pleading Standards*

We review de novo a dismissal for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). *Bowlin v. Board of Directors, Judah Christian School*, 167 F.4th 469, 474 (7th Cir. 2026). The federal rules require a plaintiff to "give the defendant fair notice of what the … claim is and the grounds upon which it rests." *Swanson v. Citibank, N.A.*, 614 F.3d 400, 404 (7th

Cir. 2010), quoting *Erickson v. Pardus*, 551 U.S. 89, 93 (2007), quoting in turn *Twombly*, 550 U.S. at 555 (alteration in original). Complaints not governed by special pleading rules require merely "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).

A complaint need not "identify any particular legal theory, nor … allege all legal elements of a particular claim." *Brown v. Meisner*, 81 F.4th 706, 708 (7th Cir. 2023); *Zimmerman v. Bornick*, 25 F.4th 491, 493 (7th Cir. 2022) ("Rule 8(a) does not require plaintiffs to 'pin' their claim for relief to any particular legal theory at the pleading stage."), quoting *Skinner v. Switzer*, 562 U.S. 521, 530 (2011). The claim for relief must still be "plausible on its face," which means "the plaintiff must give enough details about the subject-matter of the case to present a story that holds together." *Swanson*, 614 F.3d at 404, quoting *Twombly*, 550 U.S. at 570. That is, the plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. The nature of the case determines just how much the plaintiff must allege to give fair notice of the claim and how "the dots should be connected." *Swanson*, 614 F.3d at 404–05. Plausibility is not probability; the court does not ask whose version of events is more likely. *Id.* at 404.

The *Iqbal* and *Twombly* pleading standards are not precise, of course, and we still see "considerable uncertainty and variation among the lower courts as to just how demanding pleading standards have become." See *Runnion*, 786 F.3d at 520. That uncertainty and variation make it especially important to allow timely and non-futile amendments to complaints under the liberal standard of Rule 15(a)(2).

IV. *Class-of-One Equal Protection Claim*

　　A.  *Prima Facie Claim*

The "class-of-one" theory allows a claim for violating the Equal Protection Clause of the Fourteenth Amendment for unequal treatment based on grounds other than membership in a protected class. A class-of-one plaintiff must allege "that she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000); see also *Indiana Land Trust #3082 v. Hammond Redevelopment Comm'n*, 107 F.4th 693, 698 (7th Cir. 2024) (same elements). The plaintiff must allege facts establishing the lack of any "conceivable" rational basis, no matter the "actual justification." *D.B. ex rel. Kurtis B. v. Kopp*, 725 F.3d 681, 686–87 (7th Cir. 2013) (emphasis omitted). The plaintiff need not identify a specific comparator in the complaint, however, as we have "repeatedly confirmed." *Miller v. City of Monona*, 784 F.3d 1113, 1120 (7th Cir. 2015).

"The classic class-of-one claim is illustrated when a public official, 'with no conceivable basis for his action other than spite or some other improper motive ... comes down hard on a hapless private citizen.'" *Swanson v. City of Chetek*, 719 F.3d 780, 784 (7th Cir. 2013) (alteration in original), quoting *Lauth v. McCollum*, 424 F.3d 631, 633 (7th Cir. 2005). For example, we held in *Geinosky v. City of Chicago* that a plaintiff who received two dozen allegedly "bogus" and harassing parking tickets, all from officers in the same police unit and some of them inconsistent with others, stated a claim for relief under this theory. 675 F.3d 743, 745–46 (7th Cir. 2012).

Here, plaintiffs allege that the officers "knew and should
have known that they did not have probable cause to arrest or
institute proceedings against Jacqueline or John." They did so
anyway, plaintiffs allege, "to harass and harm Plaintiffs' rep-
utation based on their animus towards them," "to harm Plain-
tiffs financially by causing them to incur unnecessary legal
fees," "to retaliate against them because plaintiff Jacqueline
explained the reasons why there was no basis for alleged
charges," and "as a cover story to protect themselves for their
own misdeeds in how they interacted with Plaintiffs on the
date of the occurrence." Plaintiffs made these allegations
upon information and belief and based on specific statements
allegedly made by the officers, including their discussion of
Jacqueline's "personal life and financial situation." The most
noteworthy statements were attributed to Officer Stickle:

> Yeah, she seems like that type. Typical Illinois
> cops.
>
> …
>
> That's the same mentality of every Illinois cop I
> deal with. It's like "Hey, I'm the law. I get away
> with it. Doesn't apply to me[.]"
>
> …
>
> [T]hey make good money in Illinois.

Based on these statements and some others, plaintiffs allege
that the defendant officers "harbored an illegitimate personal
animosity against Jacqueline because she worked as a law en-
forcement officer in Illinois."

The district court seemed to treat these allegations about
the officers' states of mind as plausible. We read them that

way, too. Unless the officers routinely pursue false charges—
an unlikely defense each officer may raise if he or she
wishes—those allegations are sufficient to infer reasonably
that the officers intentionally treated plaintiffs differently
from others similarly situated, that is, other persons sus-
pected of crimes or ordinance violations who are not Illinois
law enforcement officers or their relatives and for whom
probable cause was lacking.

B. *Probable Cause*

The plaintiffs did not plead themselves out of court by
making allegations that established a rational basis for the of-
ficers' actions. The district court's second order rejected the
equal protection claim as futile on the theory that the officers
"had reason to believe" that Jacqueline committed the ordi-
nance violation for which she was cited. The court had previ-
ously concluded that the officers had probable cause to arrest
both John and Jacqueline, at least at the time they arrived at
the Agee residence. Likewise, defendants argue on appeal, as
they argued in the district court when opposing plaintiffs'
motion for leave to amend, that Jacqueline's equal protection
claim fails because the complaint establishes that the officers
had probable cause to initiate proceedings against both John
and Jacqueline. See *Williamson v. Curran*, 714 F.3d 432, 449 (7th
Cir. 2013) (probable cause provides legitimate reason for ar-
rest, defeating "class-of-one" claim); but cf. *Nieves v. Bartlett*,
587 U.S. 391, 406–07 (2019) (probable cause not always com-
plete defense to § 1983 claim for retaliatory arrest). Defend-
ants have not argued that mere reasonable suspicion would
provide a rational basis for issuing a municipal ordinance ci-
tation as a matter of federal constitutional law. To evaluate the
district court's basis for finding legal futility, therefore, we

now address whether the proposed second amended complaint on its face established to a certainty probable cause against John and Jacqueline. See *Runnion*, 786 F.3d at 519–20.[4]

Probable cause is a "practical, commonsense, and non-technical standard." *Neita v. City of Chicago*, 148 F.4th 916, 932–33 (7th Cir. 2025). It asks whether the facts and circumstances the officer knew at the time of the arrest or charge are "sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense." *Id.*, quoting *Michigan v. DeFillippo*, 443 U.S. 31, 37 (1979). We consider the totality of the circumstances together, not in isolation, including the plausibility of "a suspect's innocent explanation for suspicious facts," in determining whether there existed a "substantial chance of criminal activity." *District of Columbia v. Wesby*, 583 U.S. 48, 61 (2018), quoting *Illinois v. Gates*, 462 U.S. 213, 244 n.13 (1983). In this case, we must always keep in mind that we are reviewing only the plaintiffs' allegations.

### 1. *John Agee*

On the face of the proposed second amended complaint, we cannot say to a certainty that probable cause existed against John. Granted, a reasonable officer could have concluded that the crime of intimidation occurred and that, based

---

[4] Defendants are incorrect in saying that plaintiffs "do not challenge" the district court's conclusion that the allegations of the complaint established probable cause. See Appellees' Br. at 43. In the section of their brief on the equal protection claim, plaintiffs assert "there was no evidence whatsoever" for the citation against Jacqueline and "no basis" for the charge against John. Appellants' Br. at 33.

on Jacqueline's alibi for Braden and John's admission to working on the airsoft gun on the day in question, John was the suspect.

However, intimidation is ordinarily a misdemeanor under Indiana law. It becomes a felony if the person draws or uses a "deadly weapon," meaning a weapon "readily capable of causing serious bodily injury." Ind. Code §§ 35-31.5-2-86, 35-45-2-1(a) & (b)(2). We assume, as implied in the complaint and in plaintiffs' briefing on appeal, that the affidavit alleged the felony charge. The Indiana Court of Appeals has written that "a pellet or BB gun can be considered a 'deadly weapon' if, in the manner it is used, could ordinarily be used, or is intended to be used, it is readily capable of causing serious bodily injury." *Moore v. State*, 137 N.E.3d 1034, 1037 (Ind. App. 2019). "The fact finder may look to whether the weapon had the actual ability to inflict serious injury under the fact situation and whether the defendant had the apparent ability to injure the victim seriously through use of the object during the crime." *Merriweather v. State*, 778 N.E.2d 449, 457 (Ind. App. 2002). Indiana courts have sustained convictions requiring the use of a deadly weapon where the defendant's conduct made the victim fear for her life, among many other relevant considerations. See *Moore*, 137 N.E.3d at 1037; *Davis v. State*, 835 N.E.2d 1102, 1112–13 (Ind. App. 2005); *Whitfield v. State,* 699 N.E.2d 666, 670–71 (Ind. App. 1998).

Here, we cannot say with certainty from the face of the complaint that John's claim was futile. According to the complaint, officers actually spoke to only one of the supposed victims, and no statements about any person's subjective fear are alleged. Other potentially relevant facts not present in the complaint include:

- The distance between John and the children. See *Moore*, 137 N.E.3d at 1037 (weapon held to victim's temple).

- Any statements John made to the children. See *id.* (defendant threatened to "shoot" and "kill" victim); *Davis*, 835 N.E.2d at 1106, 1112–13 (bank robbers said "this is a stickup" and demanded cash).

- Any description of the airsoft gun other than its color. See *Whitfield*, 699 N.E.2d at 671 (testimony that "pellet guns are virtually indistinguishable from the real caliber guns that they are modeled after").

Given these missing facts and the imprecise nature of the legal standards for probable cause for federal constitutional purposes and for a "deadly weapon" under Indiana law, we cannot be certain from the face of the complaint that John's equal protection claim is futile. To be sure, answers to these unknowns may ultimately weigh against John's claim on the merits. But here we are considering legal futility, so we look at whether the facts actually pleaded foreclose John's claim to relief. Under the high standard for legal futility, they do not.

### 2. *Jacqueline Agee*

Probable cause also was not certain on the face of the complaint as to Jacqueline. The complaint alleges that the citation "states that on November 22, 2022, at 2130 hours, Jacqueline knowingly permitted John to discharge a pellet gun in town limits." Yet no witness reported a discharge on the day in question, much less that Jacqueline knowingly permitted one. At oral argument, defendants argued that the presence of tar-

gets in the backyard, John's admissions to working on the pellet gun and "looking at targets in his backyard," and the witnesses' reports that someone aimed at them add up to probable cause of a discharge "with Jacqueline's knowledge and permission." We do not see how. Based on these allegations, the conclusion is mere conjecture as to both whether a discharge occurred and as to Jacqueline's state of mind.

We take judicial notice of the text of the ordinance. See *Mestek v. Lac Courte Oreilles Community Health Center*, 72 F.4th 255, 260 (7th Cir. 2023). The ordinance prohibits not only discharging a pellet gun (or firearm) within town limits but also pointing or aiming one. Town of St. John Code § 12-5(a), https://stjohn.town.codes/Code/12-5 (https://perma.cc/3FE2-FTYG). Plaintiffs allege, however, that the citation was specifically for a "discharge" that Jacqueline "knowingly permitted."

At this stage, we accept plaintiffs' factual allegations as true and draw inferences in their favor, not against them. Whatever the officers knew about Jacqueline's knowledge of or involvement in the incident, including any additional statements from victims or witnesses (or plaintiffs themselves) not recited in the complaint, is not a basis for denying leave to amend based on futility. On the facts alleged, the officers did not have probable cause for the citation against Jacqueline.

C. *Remaining Issues*

1. *"Traditional" Equal Protection Claims*

Defendants argue briefly that because plaintiffs alleged a specific basis for defendants' personal animus, namely Jacqueline's status as an Illinois police officer, they have pleaded themselves out of a class-of-one claim since their

complaint "sounds in traditional equal protection principles." Appellees' Br. at 40. Of course, "law enforcement officer" and "child of law enforcement officer" are not protected classes in equal protection doctrine.

This argument seems odd. The validity of the class-of-one theory is not in doubt. *Olech*, 528 U.S. at 564. Defendants' rule would effectively forbid a plaintiff from alleging what he thinks were a defendant's true motives. A class-of-one plaintiff can plead herself out of court in several ways, see *Indiana Land Trust*, 107 F.4th at 698, but this is not one of them. See *Geinosky*, 675 F.3d at 748 (claim not doomed by plaintiff's suggestion that officers targeted him due to connection with his estranged wife); *Swanson*, 719 F.3d at 781–82, 785 (claim not doomed by plaintiff's allegation that mayor's campaign of harassment was retaliation for next-door home remodeling work).

### 2.   *Rewording a Malicious Prosecution Claim?*

As an alternate basis for affirmance, defendants point to this court's statement in *Wade v. Collier* that "[w]here an equal protection claim is merely a rewording of a malicious prosecution claim, dismissal of the equal protection claim is appropriate." 783 F.3d 1081, 1088 (7th Cir. 2015), citing *Vukadinovich v. Bartels*, 853 F.2d 1387, 1391–92 (7th Cir. 1988). We do not read *Wade* so broadly, however. In *Wade*, the court affirmed summary judgment on a malicious prosecution claim on the merits because it found probable cause, unlike here. *Id.* at 1085–87. And dismissal was proper in *Vukadinovich* primarily because retaliation against a public employee's speech "fits uneasily into an equal protection framework." 853 F.2d at 1391–92. Finally, in this case the equal protection claim is not duplicative of any other claim because plaintiffs told us at oral

argument that they intend to pursue only the equal protection claim.[5]

### 3.  *Qualified Immunity*

Defendants argue as another alternate ground for affirmance that the equal protection claim is futile because the officers are entitled to qualified immunity. See *Neita*, 148 F.4th at 933 (discussing qualified immunity based on arguable probable cause). The district court never passed on this issue. As with probable cause, a qualified immunity defense will depend on the totality of what the officers knew about the incident and Jacqueline's involvement. In this case, the limited record does not appear to establish the qualified immunity defense as a matter of law.

### V.  *Other Claims*

On appeal, plaintiffs do not address the merits of their malicious prosecution, false arrest, and failure-to-intervene claims. Further, at oral argument, plaintiffs called the abuse-of-process claim apparently "duplicative" of the equal protection claim and said they intend to pursue only the latter. We therefore affirm dismissal of the malicious prosecution, false arrest, and failure-to-intervene claims, as well as the denial of leave to amend to raise an abuse-of-process claim, on the alternative ground of waiver.

Plaintiffs' opening brief also did not address their claim against the town of St. John. The district court dismissed this claim solely because it concluded that plaintiffs did not allege

---

[5] Class-of-one equal protection claims in the public employment context are now barred by *Engquist v. Oregon Dep't of Agriculture*, 553 U.S. 591, 598 (2008).

any constitutional violation. We need not decide if plaintiffs waived this claim too because it fails on the merits. Plaintiffs have not "allege[d] facts that permit the reasonable inference" that *any* policy or practice of the town "is so widespread so as to constitute a governmental custom." *Gill v. City of Milwaukee*, 850 F.3d 335, 344 (7th Cir. 2017).

Finally, as the parties agree, the state-law indemnification claim is not yet ripe without a judgment against the officers. See *Medical Assurance Co. v. Hellman*, 610 F.3d 371, 375 (7th Cir. 2010); *Wynn v. City of Indianapolis*, 496 F. Supp. 3d 1224, 1232, 1239–40 (S.D. Ind. 2020). The dismissal of this claim must be modified to dismissal without prejudice because it is at least legally possible that there may be a future basis for indemnification.

Accordingly, we AFFIRM IN PART and REVERSE IN PART the judgment of the district court and REMAND for further proceedings consistent with this opinion. Plaintiffs John and Jacqueline Agee may proceed on the proposed second amended complaint as to their class-of-one equal protection claims.